**UNITED AIRLINES, INC.,**
**Plaintiff–Appellee,**

v.

**UNITED STATES of America,**
**Defendant–Appellant.**

No. 96–3094.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 21, 1997.

Decided April 16, 1997.

James L. Malone, III, McDermott, Will & Emery, Chicago, IL, Christopher Kleifoth (argued), Joni Lupovitz, and Karla Palmer, McDermott, Will & Emery, Washington, DC, for Plaintiff–Appellee.

Richard Farber, Steven W. Parks (argued), Department of Justice, Tax Division, Appellate Section, Douglas W. Snoeyenbos, Department of Justice, Tax Division, Washington, DC, and Carole J. Ryczek, Office of the United States Attorney, Civil Division, Chicago, IL, for Defendant–Appellant.

Before CUMMINGS, RIPPLE and KANNE, Circuit Judges.

CUMMINGS, Circuit Judge.

United Airlines, Inc. ("United") brought this suit for refund of federal excise tax imposed by Section 4261(a) of the Internal Revenue Code (26 U.S.C. § 4261(a)[1]). The case was tried to a jury. However, at the close of the evidence, the district court concluded that United was entitled to the tax refunds and granted its motion for judgment as a matter of law. Out of an abundance of caution, the court also submitted the case to the jury, which returned a verdict in favor of United. The government has appealed.

Section 4261(a) of the Internal Revenue Code imposes an excise tax upon the amount paid for transportation by air. Airlines are required to collect the tax from their customers upon the sale of taxable tickets and to pay the tax to the government. If a customer cancels his ticket, the airline may obtain a refund of the excise tax to the extent the airline shows that it has repaid the amount of the tax to the customer or the airline obtains the consent of the customer to the allowance of such refund.

During 1989–1991 United sold unrestricted and restricted tickets. A customer could cancel either by presenting the ticket to an airport ticketing office, a city ticket office, a travel agent, or by mailing the ticket to United's Illinois headquarters. Unrestricted or full fare tickets were fully refundable to the customers if they chose to redeem them without flying. The cheaper restricted or discount tickets were subject to various requirements and were subject to a cancellation penalty if the purchaser chose to redeem one or exchanged it for a ticket on another United flight.

United's tariffs provided that the penalty for cancelling a restricted ticket was a percentage of the total price of the ticket including the applicable federal excise tax. The penalties ranged from 25% to 75% of the amount paid for the ticket. As to flights from the continental United States to Hawaii, the penalties were 100% of the amount paid for the ticket. The question in this case is whether on the cancellation of a restricted ticket by a customer, United refunded the full amount of the tax it had collected from the customer so that United should obtain a refund of the full amount of the tax from the government, or whether United refunded only a portion of the tax it had collected from the customer, thereby entitling United to a lesser refund amount.

In the court below, United submitted that when a customer cancelled a restricted ticket two transactions occurred: First, United paid a refund to the customer of the full amount of the fare and tax it had collected, and second, the customer paid United a penalty equal to a specified percentage of the total price of the ticket. Thus if a customer cancelled a restricted ticket containing a 50% cancellation penalty, for which the fare was $200 and the excise tax was $20, United refunded $220 to the customer and the customer then paid United a $110 penalty.

Although United acknowledged that it actually subtracted the amount of the penalty ($110 in the above example) from the total ticket price ($220 in the above example) and paid the customer the balance, United contended that it was netting the two payments in the example for administrative convenience and that the substance was as if it had refunded $220 to the customer and the customer paid $110 in a two-step transaction. Thus United's position was that it refunded to customers the full amount of the excise tax ($20 in the above example) and that it was therefore entitled to obtain a refund of such tax from the Internal Revenue Service.

On the other hand, the government contended that when a customer cancelled a restricted ticket, United was obligated to refund only a portion of the fare and tax that the customer had paid and that United re-

1. Section 4261(a) provides:
(a) **In general.**—There is hereby imposed upon the amount paid for taxable transportation (as defined in section 4262) of any person a tax equal to 10 percent of the amount so paid. In the case of amounts paid outside of the United States for taxable transportation, the tax imposed by this subsection shall apply only if such transportation begins and ends in the United States.

tained the balance of such fare and tax. Accordingly, the government contended that the $110 refunded by United to the customer consisted of one-half of the fare ($100) and one-half of the tax ($10) paid by the customer in purchasing the ticket, so that the $110 retained by United consisted of $100 fare and $10 tax. As a result, the government submitted that pursuant to 26 U.S.C. § 6415(a)[2] United was not entitled to a $20 tax refund but only a $10 refund on the ground that it had refunded only $10 of the tax to the customer.

The case was tried to a jury. United's witnesses (four employees from United's pricing implementation, customer service, passenger refund and revenue accounting departments; an independent travel agent; and a financial accounting expert) construed the transactions as involving the payment by United of a full refund of fare and tax, payment by the customer of a penalty, and the netting together of the two transactions. However, the witnesses admitted that the penalty was the retention of the money that the customer had already paid. The government did not present any witnesses at trial.

When the evidence was concluded, each side moved for judgment as a matter of law, and the district court held that United had established that it refunded all of the fare and all of the tax to the customer and then imposed the penalty, and it was a netted transaction. In case this Court should hold that the issue should have been submitted to the jury, Judge Lindberg decided to have the jury also decide whether United had refunded the amounts of tax to customers.

After receiving the court's instructions, the jury found that United had refunded the entire amount of federal excise tax paid by its customers who cancelled restricted tickets. According to the district court, the jury's verdict rendered moot United's motion for judgment. Thereafter the court denied the government's renewed motion for judgment as a matter of law and entered judg-

ment for $4,076,602 in United's favor. We affirm.

**Discussion**

In its brief the government has stated that the issue is "[w]hether, on the cancellation of a restricted airline ticket by a customer, United Airlines refunded to the customer the full amount of the airline transportation tax it had collected on the sale of the ticket...." This question of fact was decided by both the jury and trial court in United's favor. Therefore, we are meant to review the evidence in the light most favorable to the prevailing party rather than substituting our judgment for that of the jury— *Unity Ventures v. County of Lake,* 841 F.2d 770, 772 (7th Cir.1988), certiorari denied *sub nom., Alter v. Schroeder,* 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216; *Smith v. Rogers,* 290 F.2d 601, 602 (7th Cir.1961)—and we will affirm a jury verdict so long as "there is a reasonable basis in the record for the verdict," *Goetz v. Cappelen,* 946 F.2d 511, 516 (7th Cir.1991). Even if this appeal involved the district court's denial of the government's post-trial motion for judgment under Rule 50 of the Federal Rules of Civil Procedure, we must still "view the evidence in the light most favorable to the nonmoving party and ascertain whether there exists 'any evidence upon which a jury could reach a verdict for the party producing it.'" *Deimer v. Cincinnati Sub–Zero Products, Inc.,* 58 F.3d 341, 343–344 (7th Cir.1995) (quoting *Fulk v. Illinois Central Railroad Co.,* 22 F.3d 120, 124 (7th Cir.1994), certiorari denied, 513 U.S. 870, 115 S.Ct. 193, 130 L.Ed.2d 125).

Section 6415(a) of the Internal Revenue Code provides for the refund of overpayments of this tax (see note 2 *supra*), and the applicable Revenue ruling provides as follows:

To the extent the airline refunds to the passenger the amount paid for the air transportation, the collected transportation tax attributable to the amount of such

---

2. 26 U.S.C. § 6415(a) provides:

(a) **Allowance of credits or refunds.**—Credit or refund of any overpayment of tax imposed by section 4251, 4261, or 4271 may be allowed to the person who collected the tax and paid it to the Secretary if such person establishes,

under such regulations as the Secretary may prescribe, that he has repaid the amount of such tax to the person from whom he collected it, or obtains the consent of such person to the allowance of such credit or refund.

refund may be refunded to such passenger. However, to the extent the airline does not refund to the passenger the amount paid for the air transportation, the collected transportation tax attributable to such nonrefunded amount is to be remitted by the airline to the Government.

Rev. Rul. 89–109, 1989–2 C.B. 232. Therefore United would be entitled to a refund of the full amount of the airline transportation tax it had collected on the ticket sale by showing that after a restricted airline ticket was cancelled by the customer, United refunded the full amount of the tax to the customer. Here the jury found that United did repay the full amount of the excise tax to customers who cancelled restricted tickets.

The uncontroverted evidence shows that United refunded the full fare and tax to each customer cancelling a restricted airline ticket and that United collected in a netting transaction a cancellation penalty based on a percentage of the total fare, including tax, paid by the customer. No rebuttal evidence was presented by the government.

At trial, United presented evidence that when a customer returned a restricted ticket at a United airport ticket counter or city ticket office, United's ticket agents would complete a special form to collect the cancellation penalty. Then the agents would calculate the difference between the amount of the full ticket refund (including the full excise tax amount) and the amount of the cancellation penalty and credit the customer with the net difference. In some situations, the customer paid for the cancellation penalty separately, with a different credit card or form of payment from that used to purchase the airline ticket.

United also presented evidence that if customers returned restricted tickets to travel agents, the agents would net the refund and the penalty collection transaction. They used forms, filling in the amount of the total fare refunded and the total tax refunded less the cancellation penalty, thus processing a net transaction of what will be refunded to the clients' credit cards or the total amount due back to the clients in cash or check.

United's own in-house refund department also processed restricted ticket refunds in a netting transaction. On the refund form, the departmental employee would fill in the full fare amount and the full tax amount, any cancellation penalty, and the "net adjustment" given back to the customer.

United's accounting witness testified that its method of accounting for redemptions of restricted tickets also accorded with its position that it fully refunded the purchase price of tickets and then collected a separate penalty. He testified that if a customer returned a $220 ticket subject to a 50 percent cancellation penalty, United would (i) debit the unearned revenue account by the full $200, and (ii) debit the tax liability account by the full $20. He added that under United's accounting treatment the net amount that the customer received upon cancelling a restricted ticket consisted of cash and relief from liability to pay the penalty that he owed to United. United's expert witness, Professor Wheeler, testified that United's one-step netting procedure was the same as if United refunded the full ticket fare and full tax amount to the customer and then collected a cancellation penalty from him.

Therefore United's unrebutted testimony showed that its accounting entries and netting transactions demonstrate that the full fare and excise tax were repaid to the customer. There was no contrary testimony so that the jury found and the district court held that United was entitled to a full tax refund from the government under 26 U.S.C. § 6415(a). In light of the evidence discussed in the preceding paragraphs, this Court finds that there is easily a reasonable basis in the record for the jury's determination that United repaid the full ticket fare and tax to customers in cancelling restricted tickets. The government simply has not shown otherwise.

Despite the government's urging, the tariff in question does not lead to a contrary result, because it only provides that upon cancellation of the ticket a certain "PERCENT OF THE FARE PER COUPON WILL BE ASSESSED," and that this penalty charge will be "ASSESSED ON THE APPLICABLE FARE, INCLUDING TAX." We agree with the district court that the language of the

tariff is equivocal and unhelpful to either party's position; it certainly does not say that United will refund only a portion of the fare and a portion of the tax, as the government argues. The tariff does not address the amount of excise tax United was obligated to refund nor the amount of excise tax United in fact refunded. The tariff is not relevant in addressing the factual issue in this case: Whether United in fact refunded the full amount of the excise tax upon cancellation of a restricted ticket.[3]

### Adequacy of jury instructions

■ The government also argues that the district court erred in permitting the jury to resolve the case based on incorrect jury instructions that were prejudicial to the government's theory of the case. Our review of this issue is limited. See *Stachniak v. Hayes*, 989 F.2d 914, 920 (7th Cir.1993). This Court looks, first, to "whether the instruction misstates or insufficiently states the law," and if the answer is affirmative, then we determine if the error prejudiced one of the parties. *U.S. E.E.O.C. v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1283 (7th Cir.1995). As this Court has emphasized before, "[w]ith instructions, we don't pick nits; we examine the whole of what was given and look for overall fairness and accuracy." *Trustees of Indiana University v. Aetna Casualty & Surety Co.*, 920 F.2d 429, 437 (7th Cir.1990) (overruled on unrelated grounds by *Watson v. Amedco Steel, Inc.*, 29 F.3d 274 (7th Cir.1994)).

■ The government asserts that the district court erred when it refused to instruct the jurors: (i) that, under United tariffs, customers who cancelled tickets did not have a legal obligation to pay any further amount to United and that United did not have a legal obligation to refund to the customer the entire amount of the customer's original payment; (ii) that the manner in which United accounted for transactions involving the cancellation of restricted tickets was not disposi-

tive; and (iii) that it was the payment, rather than the transportation itself, that was the subject of the tax. The government does not argue here that the court's failure to give these requested instructions resulted in a misstatement or insufficient statement of the law applicable to the case; instead they argue that the refusal was prejudicial because it deprived them of an opportunity to have a jury consider a critical element of their theory of the case.

But the government and the district court arrived at the following instruction, which was submitted to the jury:

> If you find that United Airlines did not net the refund and penalty transactions into one transaction in the cancellation of penalty tickets but, rather, refunded a percentage of the fare and excise tax and, thereby, retained the remaining percentage of the fare and excise tax, then you must find for the defendant.

The jury was also instructed in the following manner, which states United's theory of the case:

> With respect to refund transactions involving discount airline tickets subject to a cancellation penalty, if you find that United Airlines netted the fare and excise tax amounts due to the customer from the refund of the ticket against the cancellation penalty due from the customer, then you must also find that United refunded the fare and excise tax amount to the customer.

Together these instructions embody the positions of the respective parties so that the government may not fault them. They are fair and accurate and sufficiently state the law of the case. We have considered the specific arguments of the government, but we agree with the district court that the instructions proffered by the government were unnecessary, incomplete or confusing. Accordingly, there is simply no basis for finding that the failure to give the instruc-

---

**3.** While the government relies on *Statland v. American Airlines, Inc.*, 998 F.2d 539 (7th Cir. 1993), certiorari denied, 510 U.S. 1012, 114 S.Ct. 603, 126 L.Ed.2d 568, the case does not support the government's position that United failed to refund the full amount of the excise tax

because there we were required to view the facts of the case in the light most favorable to the plaintiff and we held merely that the complaint was properly dismissed for want of subject matter jurisdiction.

tions offered by the government prejudiced the government.

Judgment affirmed.