In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-1598

GERALD SCHOBERT AND RONALD E. WERNER

*Plaintiffs-Appellants*,

*v.*

ILLINOIS DEPARTMENT OF TRANSPORTATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois, East St. Louis Division.
No. 99-CV-67—**Michael J. Reagan**, *Judge.*

ARGUED JANUARY 8, 2002—DECIDED SEPTEMBER 16, 2002

Before POSNER, COFFEY, and DIANE P. WOOD, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* This appeal follows a jury verdict in favor of the defendant Illinois Department of Transportation (IDOT). Gerald Schobert and Ronald Werner, maintenance workers for IDOT, accused their employer of violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* They argued unsuccessfully to the jury that IDOT discriminated against men by permitting the one woman in the maintenance department to be a "beneficiary" of what they called quid-pro-quo sexual harassment. They also maintained that they were retali-

ated against after complaining about the discrimination. Schobert and Werner now appeal the district court's denial of their motion for a new trial, arguing that the jury was improperly instructed. We affirm the judgment of the district court.

**I**

Schobert and Werner were employees in IDOT's highway sign shop in Fairview Heights, Illinois. Their responsibilities included installing and maintaining signs, marking pavement, and painting lines on the highway. One—and only one—of their colleagues was female: Tame Roth. Much of their trial testimony centers around her, and the preferential treatment they believed she received. Werner and Schobert testified that Roth received special treatment because of her sex. For example, Werner claimed that he saw Roth sit in a suggestive way on Blake Pfannebecker, the lead worker responsible for determining assignments. Schobert also claimed Roth once took her shirt off in front of an assistant technician (a position above other lead workers such as Pfannebecker).

In addition, Werner and Schobert testified that Roth received special treatment at the sign shop. They maintained that Roth was not required to do the more difficult and dangerous jobs and that she never performed the preventative maintenance work on her assigned truck required of other employees. Schobert further claimed that when he was forced to work with Roth, all the undesirable assignments were reassigned to either him or other male employees.

In September 1997, Schobert backed a truck into another vehicle, causing substantial damage. He was given notice of a pre-disciplinary hearing to review the incident. After Schobert received the notice, he filed an internal complaint

of sex discrimination because his complaints regarding Roth's special treatment were being ignored. In his complaint, he asserted that IDOT provided Roth preferential treatment because of her sex. Schobert, this time with Werner's signature as well, then filed a complaint with the Equal Employment Opportunity Commission (EEOC) again alleging sex discrimination.

IDOT interviewed Schobert, Werner and others regarding the internal sex discrimination complaint. Soon after the interview, Schobert and Werner first experienced what they considered to be retaliation. Their complaints range from being forced to work in unsafe conditions to being unfairly subject to discipline. For example, Schobert testified that he was forced to use a cutting torch near natural gas, that he was assigned to dig on an interstate that had not yet been "JULIE'd" (checked and marked for underground wires and utilities), and that he and Werner were forced to miss part of the training on safety harnesses. Schobert also alleged he was assigned for months to remove and install delineators (steel posts with reflectors on the side of the road) without proper equipment, even though such arduous work is ordinarily rotated. This assignment continued until he was forced to go on leave because of back and hand problems.

Schobert and Werner further testified that IDOT retaliated by giving them incorrect assignments and blaming them for other employees' mistakes—all conduct that could and did result in negative employment evaluations. For example, Schobert claims that Pfannebecker tried to get him to submit a false time sheet, that he and Werner were blamed for leaving the gate to the supply yard open, and that they were given conflicting assignment information by the supervisors and were then blamed for the resulting confusion. Schobert and Werner also complained that they were forced to work with Joe Marti, the crew chief at the sign shop, who would stop for lunch breaks in places that had no bathroom and where they could not purchase lunch as they liked to do. Finally, when Werner was crew lead-

er he was reprimanded for unfairly rotating duties. Although some of these incidents led to negative evaluations, Schobert and Werner were never disciplined and continued to be employed by IDOT.

Although the jury heard all of this, most of what we have recounted thus far came from either Schobert and Werner. The problem for them, in a nutshell, is that the jury was not compelled to accept their version of these events, or their interpretation of the motivations behind these actions. Instead, at this stage we must take the facts in the light most favorable to IDOT, the winner of the jury verdict. *EEOC v. Bd. of Regents of Univ. of Wis. Sys.*, 288 F.3d 296, 301 (7th Cir. 2002). The jury had a considerable amount of evidence in front of it that was contrary to Schobert's and Werner's testimony, and it chose to believe IDOT's witnesses. IDOT denied it ever discriminated against or harassed Schobert or Werner. Roth and Pfannebecker maintained that she never sat on Pfannebecker's lap, and Roth also testified that she never removed her shirt in another employee's truck. Finally, IDOT offered testimony that Schobert expressed derogatory views about women generally, and that he openly expressed the opinion that women should not be in the workplace or have supervisory roles. Pfannebecker and Dan Myers, head of the sign shop, also testified that Schobert and Werner had personality conflicts with sign-shop management and that they did not make good-faith efforts to perform assignments.

After surviving pretrial motions, this case was tried to a jury on Schobert's sex discrimination claim as well as Schobert's and Werner's retaliation claims. At the close of evidence, the district court submitted a series of instructions to the jury. Schobert and Werner objected specifically to Court's Instructions 12 and 13. Court's Instruction 12 stated with reference to Schobert's sex discrimination claim:

> Gerald Schobert claims that he sustained damages and that the Department of Transportation of the State of Illinois intentionally discriminated against him because of his sex in one or more of the following respects.
>
>> In giving him significantly worse job assignments than were given to a female employee.
>>
>> In allowing a female employee to refuse undesirable job assignments.
>
> Schobert further claims that the foregoing directly resulted in his damages.
>
> Defendant denies that it discriminated against Schobert because of his sex and denies that any act or omission on its part directly resulted in Schobert's claimed damages. The defendant further denies that Schobert sustained damages.

Court's Instruction 12 contained similar instructions on Schobert's and Werner's retaliation claims.

Although we are only reproducing the portion of Court's Instruction 13 that applied to Schobert, the part of the instruction applicable to Werner's claim was identical. On the retaliation claims, Schobert and Werner each had to prove:

> First, that the defendant intentionally acted in the way claimed by Schobert stated to you in these instructions;
>
> Second, that Schobert suffered adverse employment action, as that term is defined in these instructions,
>
> Third, that there was a causal connection between Schobert's internal claim of sex discrimination and/or his filing a Charge of Discrimination with the United States Equal Employment Opportunity Commission and the adverse employment action,
>
> Fourth, that Schobert suffered damages,

Fifth, that Schobert's damages were a direct result of defendant's wrongful conduct. . . .

Schobert and Werner argued Court's Instruction 12 improperly required the jury to find that Schobert and Werner sustained damages to prevail. They further objected to Court's Instruction 13, arguing that it incorrectly instructed the jury on the elements of a *prima facie* case for retaliation, which was no longer relevant after the case was submitted to the jury. The district court did not alter the instructions, emphasizing that Court's Instruction 13 was "not an instruction as to the *prima facie* case, but instead is an instruction as to the burden of proof."

The jury found in favor of IDOT, and Schobert and Werner filed a motion for a new trial, claiming they were prejudiced by the jury instructions. The district court denied the motion and they appeal from that order.

## II

The centerpiece of the appeal is the attack on the jury instructions just set forth. Schobert and Werner claim that these instructions misstated the law and that they suffered prejudice from the inaccuracies. We review a district court's decision on a motion for a new trial only for abuse of discretion, as we recognize the district court is in a unique position to rule on the motion. *Research Sys. Corp. v. IPSOS Publicite*, 276 F.3d 914, 921 (7th Cir. 2002). When a motion for a new trial under Fed. R. Civ. P. 59 is based on a challenge to jury instructions, we consider a trial court's jury instructions with deference, analyzing them as a whole to determine if they accurately stated the law and did not confuse the jury. *Knox v. Indiana*, 93 F.3d 1327, 1332 (7th Cir. 1996); *Maltby v. Winston*, 36 F.3d 548, 560 (7th Cir. 1994).

As an initial matter, IDOT claims that Schobert and Werner failed properly to preserve their objections as required by Fed. R. Civ. P. 51. Rule 51 provides in relevant part that any party wishing to contest a jury instruction must distinctly state the matter objected to and the ground of the objection. The objection must be specific enough that the nature of the error is brought into focus. *Knox*, 93 F.3d at 1333; *Mankey v. Bennett*, 38 F.3d 353, 361-62 (7th Cir. 1994). The party must also explain what is wrong with the proposed instruction; it is not enough simply to submit an alternative instruction. *Pena v. Leombruni*, 200 F.3d 1031, 1035 (7th Cir. 1999). There are no formal requirements, but pragmatically speaking the district court must be made aware of the error prior to instructing the jury, so that the judge can fix the problem before the case goes to the jury. *Guerts v. Barth*, 892 F.2d 622, 624 (7th Cir. 1989). Consistency is required as well; to preserve the objection, the party must state the same grounds when objecting to the jury instruction as it does in its motion for a new trial or on appeal. Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE & PROCEDURE 2d § 2554 (2d ed. 1997).

IDOT admits that Schobert and Werner objected to these instructions. However, it argues that their objections were so vague they could not meet the requirements of Rule 51. Schobert's and Werner's specific objection to Court's Instruction 12 was that "it requires the jury to find that Mr. Schobert and Mr. Werner sustained damages in order for them to prevail on their claims of discrimination and retaliation." As for Instruction 13, Schobert and Werner stated:

> the jury is going to have to find that Mr. Schobert and Mr. Werner suffered damages in order to establish their claims of gender discrimination and retaliation. Also, we would object in that it states the elements of prima facie case . . . and, we believe that there is no more

requirement of showing an adverse employment action in order to establish a case of actionable retaliation.

We are satisfied that this was a specific enough objection to serve the purpose for which Rule 51 was designed. Schobert and Werner made it clear that they thought the instructions were flawed in three respects: (1) they erroneously required the plaintiffs to prove damages to prevail, (2) they wrongly submitted the *prima facie* case to the jury, and (3) they incorrectly required the plaintiffs to prove an adverse employment action for their retaliation theory. This was enough to alert the district court to the pertinent areas of disagreement.

IDOT also criticizes Schobert and Werner for failing to present their preferred instruction to the district court. It maintains that the district court probably misunderstood the grounds for the instruction because of their failure to propose that the district court use the term "injury" instead of the term "damages" in the two instructions (which they think would have been preferable). IDOT goes on to state that Schobert and Werner should have told the district court that they were satisfied with IDOT's proposed instruction, which (according to IDOT) would have resolved their concerns. However, IDOT cites no case to support its argument that a party must approve of the *opposing* party's proposed instruction, which was also rejected by the district court, to preserve a Rule 51 objection. Schobert and Werner informed the district court that they objected to the use of the term "damages" and the requirement that they establish a *prima facie* case; that is all they needed to do.

Schobert and Werner argue that Court's Instructions 12 and 13 were inaccurate statements of law and were inconsistent with other instructions, which confused the jury. This court looks at jury instructions in their entirety when determining whether they properly informed the jury of the applicable law. *Reed v. Union Pac. R.R. Co.*, 185 F.3d 712,

715 (7th Cir. 1999). We are not looking for an "idealized set of perfect jury instructions," *Knox*, 93 F.3d at 1333, but the jury instructions must be correct legal statements and supported by the evidence. *Jaffee v. Redmond*, 51 F.3d 1346, 1353 (7th Cir. 1995). If an instruction is so misleading that a party was prejudiced, then reversal is required. *Humphrey v. Staszak*, 148 F.3d 719, 723 (7th Cir. 1998).

Court's Instruction 12 required Schobert and Werner to prove that they suffered damages, and that their damages were a result of wrongful conduct. Schobert protests that under these instructions, IDOT could discriminate against him on the basis of his sex, but he would not prevail if he could not show damages. Similarly, Schobert and Werner could prove they were subjected to unfair working conditions and disciplinary actions, but would not prevail if they could not demonstrate material damage. They argue that this statement confused the jury because Title VII plaintiffs do not have to prove damages, but must only prove discrimination. (A prevailing party in a case with no concrete damages like lost wages would still be entitled to an award of nominal damages.) Schobert and Werner thus urge this court, on the basis of authority such as *Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 298 (7th Cir. 2000) (finding that employment discrimination "testers" who were discriminated against had standing to sue under Title VII even if they were not interested in employment), to find that discrimination need not result in any damage, but that it is the discrimination or unequal treatment that allows plaintiffs to recover.

The problem with their argument (and for that matter, with the court's instructions, which we deal with in a moment) is that it confuses the idea of monetary damages with the idea of harm. Even in cases with no monetary consequences to the plaintiff, it is still necessary for the plaintiff to prove at least a dignitary harm. We know of no authority that would permit us to find that no demonstra-

tion of harm is required to prevail. Every tort, whether it be one derived from common law or a statutory tort like Title VII, requires a showing of harm. *JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*, 190 F.3d 775, 778 (7th Cir. 1999); see also *Timm v. Progressive Steel Treating, Inc.*, 137 F.3d 1008, 1010 (7th Cir. 1998) ("a plaintiff must suffer *some* injury") (emphasis in original). Indeed, Schobert and Werner even argued to the jury that they were injured. For example, Schobert asserted that he was assigned tasks on the basis of his gender and treated differently. That is a perfect example of harm that did not translate into dollars and cents: his salary was unaffected, but he allegedly suffered from undesirable job assignments and bearing the brunt of others' preferred treatment.

Schobert is correct that discrimination plaintiffs may prevail even if they will receive very little by way of economic compensation. *Kyles*, 222 F.3d at 298 (noting a victim may still bring a Title VII suit even if her relief may be limited). Plaintiffs may see value in a verdict against the defendants even if they only receive nominal compensation, and we have noted before that a civil rights plaintiff may act as a "private attorney general vindicating a policy that Congress considered of the highest importance." *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 872 (7th Cir. 1995). But at most, this suggests that the language the district court used in the instruction was too imprecise. The court should not have used the term "damages" as it did in the two challenged instructions. Instructions should distinguish between "injury" (meaning the plaintiff's loss) and "damages" (meaning the monetary remedy). Here, unfortunately, the single word "damages" was not used consistently. At one point it was offered as a synonym for "injury" or "harm," while at another point it was presented as the "loss of enjoyment of a normal life" and the "emotional pain, suffering, and mental anguish experienced and reasonably certain to be experienced in the future." The district court

also gave an instruction for "nominal damages," providing a third use of the term. Greater precision would have avoided the problem we are now facing.

The instruction given on the retaliation claims suffered from the same type of flaw. The district court instructed the jury that the plaintiffs could prevail on their retaliation claim only if it found that they experienced "adverse employment actions." Court's Instruction 14 then defined an adverse employment action as "discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment or limiting, segregating, or classifying employees in any way that would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee."

Schobert and Werner, pointing to the distinction the Supreme Court and this court have drawn between issues for a judge and issues for a jury urge this court to find that the instruction was an incorrect statement of the law because it instructed the jury to find the elements of a *prima facie* case. See *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715 (1983); *Achor v. Riverside Golf Club*, 117 F.3d 339, 341 (7th Cir. 1997) ("[E]lements that make up a 'prima facie case' are for the judge, not the jury"); *Gehring v. Case Corp.*, 43 F.3d 340, 343 (7th Cir. 1995) ("Once the judge finds that the plaintiff has made the minimum necessary demonstration (the 'prima facie case') and that the defendant has produced an age-neutral explanation, the burden-shifting apparatus has served its purpose, and the only remaining question—the only question the jury need answer—is whether the plaintiff is a victim of intentional discrimination.").

Acknowledging this precedent, IDOT argues the district court should nevertheless instruct the jury that it must find an adverse employment action before a plaintiff may prevail on a retaliation claim. It maintains that this is so

because the plaintiff bears the burden of persuasion. Yet IDOT has not offered a reason why *McDonnell Douglas* burden-shifting should apply in cases of retaliation during trial proceedings (Schobert and Werner's case), but not in straightforward discrimination trials. See *Achor*, 117 F.3d at 339. Retaliation is merely another form of discrimination. *Knox*, 93 F.3d at 1334. After the pretrial stage, plaintiffs needed only to demonstrate that they were discriminated against for opposing an "unlawful employment practice," 42 U.S.C. § 2000e-3, to sustain a retaliation claim. The jury here should have been asked only to consider whether the plaintiffs suffered retaliation because of protected activity, rather than to decide whether the allegedly adverse consequences amounted to an adverse employment action. *Cf. Aiken*, 460 U.S. at 715.

The fact that these instructions may not have been accurate is not, however, the end of our inquiry. If jury instructions contain incorrect or confusing legal statements, this court considers whether a party was prejudiced by the instruction. *United Airlines, Inc. v. United States*, 111 F.3d 551, 555 (7th Cir. 1997). If the jury instructions are misleading or inconsistent, we must be confident that the jury resolved any inconsistencies. Although these instructions were not as clear as they should have been and at times were incorrect, Schobert and Werner have not shown that they were prejudiced by the statements.

A.  Schobert's Sex Discrimination Claim

Schobert claims that he offered enough evidence to prove discrimination by showing that the one woman employed at his worksite received advantages he and the other male employees did not. The evidence he presented does not bear out that claim. Schobert's argument was either that Roth was sexually harassed and as a third-party he too suffered from that harassment, or (more likely) that Roth had a con-

sensual relationship with a supervisor, who then granted her preferential treatment. Schobert's first argument was rejected by the Fifth Circuit in *Ellert v. Univ. of Texas*, 52 F.3d 543, 546 (5th Cir. 1995). There the court held that a plaintiff could not maintain an action for sexual harassment where she was not actually subject to any harassing conduct even if she felt discriminated against as a result of harassment suffered by a fellow employee. We agree with the Fifth Circuit and find that unless Schobert offered evidence that he too directly endured the same kind of harassment, which he has not, he does not have a claim of sex discrimination.

His alternate argument, which is the one we understand him to be stressing, is more akin to the employer's favoring the "paramour" over the other employees. Title VII does not, however, prevent employers from favoring employees because of personal relationships. Whether the employer grants employment perks to an employee because she is a protegé, an old friend, a close relative or a love interest, that special treatment is permissible as long as it is not based on an impermissible classification. See *DeCintio v. Westchester County Medical Center*, 807 F.2d 304, 306 (2d Cir. 1986) (rejecting the argument that male plaintiffs are discriminated against if a supervisor prefers his female love interest). From a practical standpoint, there is every reason for an employer to discourage this kind of intra-office romance, as it is often bad for morale, but that is different from saying it violates Title VII. Had there been other women in the sign shop, they would have suffered in exactly the same way Schobert was allegedly suffering, which also shows why this is not really a sex discrimination problem.

B. Retaliation Claims

Turning to the retaliation claims, while we agree that Schobert and Werner were not prejudiced by the instruc-

tion, our reasons differ from those IDOT has advanced. IDOT argues that the plaintiffs were not prejudiced because they never received a change in compensation or benefits and remained employed with IDOT. To the extent that IDOT thinks that plaintiffs must prove an economic loss to support a retaliation claim, it is mistaken. In fact, we have often recognized non-economic forms of retaliation. See, *e.g.*, *Markel v. Bd. of Regents of the Univ. of Wis. Sys.*, 276 F.3d 906, 911-12 (7th Cir. 2002) (noting that employment discrimination results frequently in economic harm, but leaving room for non-economic injury); *Knox*, 93 F.3d at 1334 ("There is nothing in the law of retaliation that restricts the type of retaliatory act that might be visited upon an employee who seeks to invoke her rights by filing a complaint."); *Smart v. Ball State Univ.*, 89 F.3d 437, 440-42 (7th Cir. 1996) (describing the wide range of possible adverse employment actions). The question for juries is not whether a plaintiff demonstrated an adverse *employment* action, it is whether the plaintiff can point to an adverse event that occurred after asserting her protected rights; this could include non-employment activities such as brick-throwing, tire-slashing or other unfortunate acts. The only requirement is that the adverse act must occur because of the employee's exercise of protected rights.

That being said, not every slight or inconvenience is adverse enough to count as retaliation. Non-economic employment actions such as requiring a maintenance worker to do an undesirable job, *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 712 (7th Cir. 2000), by themselves are not retaliatory acts forbidden by Title VII. The key question for us is whether the limitation found in the instructions (to employment actions) prejudiced Schobert and Werner.

Schobert and Werner spend several pages of their brief describing the acts that they believe were retaliatory. Their complaints ranged from receiving undesirable assignments to being blamed for other employees' mistakes. Although

these acts did not affect the "compensation" or "terms" of employment, the district court's definition of adverse employment action included the "conditions" and "privileges" of employment. It then went on to state that an adverse employment action covered anything that involved "limiting, segregating, or classifying employees in any way that would deprive any individual of employment opportunities or otherwise adversely affect his status as an employee."

Schobert and Werner have not alleged that IDOT retaliated against them outside of their employment. In their version of events, no one threw a rock through Schobert's bedroom window or slit Werner's tires. The "adverse" acts alleged by Schobert and Werner related only to the conditions of their employment and their access to employment privileges. Under the instructions as given, the jury was therefore free to consider everything they presented, because all of the alleged retaliation occurred in the employment context. The jury simply did not believe their version of events. We are confident that it heeded all the instructions and that it did not find that Schobert's and Werner's conditions or privileges of employment were affected after they complained about sex discrimination.

## III

For the foregoing reasons, the judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*