FILED
United States Court of Appeals
Tenth Circuit

July 25, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

KENYON BRADY CLARK,

Plaintiff-Appellant,

v.

CACHE VALLEY ELECTRIC
COMPANY, a Utah corporation,

Defendant-Appellee.

No. 13-4119
(D.C. No. 2:11-CV-00461-DN)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **PORFILIO** and **O'BRIEN**, Circuit Judges.

Kenyon Brady Clark filed this action alleging that his employer, Cache Valley

Electric Company ("Cache Valley"), unlawfully discriminated against and retaliated

against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000e-2000e-17. The district court granted summary judgment in favor of Cache

Valley. It reasoned (1) Mr. Clark's discrimination claim was based solely on his

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

supervisor's alleged voluntary romantic affiliation with a female subordinate, and therefore failed to state a claim for relief under Title VII; and (2) Mr. Clark failed to demonstrate that Cache Valley's stated nondiscriminatory reasons for terminating his employment were pretextual. For the following reasons, we affirm.

**DISCRIMINATION CLAIM**

**1. Background**

Mr. Clark began working for Cache Valley, an electrical contracting company, in 1998. In 2006, he became a project manager, responsible for managing projects for customers in the Teledata Division. Myron Perschon supervised the Teledata Division's project managers, including Mr. Clark and one female with project manager duties, Melissa Silver.

In his district court complaint, Mr. Clark alleged that Mr. Perschon favored Ms. Silver with respect to job assignments, bonuses, and other working conditions because Mr. Perschon was or had been romantically involved with Ms. Silver. The complaint also included conclusory statements that Mr. Perschon favored females generally, but Mr. Clark presented no evidence to support these statements.

Beginning with his summary judgment response brief, however, Mr. Clark attempted to distance himself from the allegations of his complaint. In this appeal, he argues that his discrimination claim was not based on a purported romantic or sexual relationship, because (1) the alleged sexual conduct occurred years before he first complained to Cache Valley of discrimination and retaliation, and (2) Cache

- 2 -

Valley eventually investigated the matter and informed him that no romantic or sexual relationship existed. Mr. Clark denies that his complaint asserts favoritism based on what turned out to be a non-existent affair. *See* Aplt. Opening Br. at 39-40.

Unfortunately for Mr. Clark, however, the plain language of his complaint does not support this revisionist interpretation. Instead, the complaint alleged an inappropriate relationship between Mr. Perschon and Ms. Silver involving conduct of a sexual nature, and favoritism resulting from that relationship, that affected his employment at all times relevant to the complaint. *See* Aplt. App., Vol. I at A24-25. Moreover, although it contained conclusory allegations concerning Mr. Perschon's general favoritism toward females, Mr. Clark later admitted in his summary judgment response that he had not presented any evidence that Mr. Perschon provided favored treatment to any other female employee besides Ms. Silver. *See* Summary Judgment Response, *Clark v. Cache Valley Elec. Co.*, No. 2:11-cv-00461-DN, doc. 39, at 8 (D. Utah Apr. 26, 2013) (characterizing as "[u]ndisputed" Cache Valley's contention that Mr. Clark "has not specifically alleged, or provided any evidence that Mr. Perschon provided favored treatment to any other female employee besides Ms. Silver").[1]

---

[1] We have consulted the district court's electronic docket to review this summary judgment response, *see* Fed. R. App. P. 40(a)(2), which should have been included in Mr. Clark's appendix, *see* 10th Cir. R. 10.3(D)(2), 30.1(A)(1), but was not.

In sum, the basis of his discrimination claim was that Mr. Perschon favored Ms. Silver over Mr. Clark because Ms. Silver and Mr. Perschon were in a romantic or sexual relationship. Although Mr. Clark complains that the district court "construed allegations in [his] complaint against him," Aplt. Opening Br. at 39, in fact, it simply read the complaint as written.

The summary judgment evidence also supports the district court's understanding of the complaint. During his deposition, Mr. Clark was asked about the allegations that he had suffered personally and professionally due to the relationship between Mr. Perschon and Ms. Silver. He explained that they "acted like they were married." Aplt. App., Vol. I at A157.

Mr. Clark acknowledged that he could not be certain Mr. Perschon and Ms. Silver were in a sexual relationship. But he stated "whether they were having sex or not, there was favoritism." *Id.* at A172. He was then asked "where do you think that favoritism was coming from?" *Id.* He responded:

> [I]t goes back to just the way that, you know, they interacted with each other. Whether they were having sex or not, off of what I witnessed from Myron [Perschon] he definitely had – it wasn't business. It should have been a business relationship. It was not a business relationship.

*Id.* at A172-73.

Nor did Mr. Clark cease complaining about the relationship once Cache Valley conveyed to him Mr. Perschon and Ms. Silver's denials. Mr. Clark described

- 4 -

a meeting with Nathan Wickizer, Chief Operating Officer at Cache Valley, that took place several months before Mr. Clark was fired:

> 26. During this meeting, [Mr.] Wickizer . . . told me that he had discussed the alleged affair with Mr. Perschon and Ms. Silver and that they had both denied any sexual or other personal relationship, and that [Cache Valley] was not concerned with what, if anything, the two of them did on their own time.
>
> 27. I took Mr. Wickizer at his word. However, I told him that I was still concerned about the amount of time [Mr.] Perschon was spending with [Ms.] Silver, their behavior together (that they acted unprofessionally for a business environment and more like a married couple), that [Mr.] Perschon performed most of [Ms.] Silver's job functions as a Project Manager (e.g., bids, walkthroughs, takeoffs, manpower), and that she was being paid more for performing less work than the male Project Managers supervised by [Mr.] Perschon, including me, and that she was unfairly getting jobs from [Mr.] Perschon.

*Id.* at A49.

When asked about the alleged favoritism during his deposition, Mr. Clark failed to articulate a discriminatory, rather than a relationship based, rationale for Mr. Perschon's behavior. He was asked:

> Q. . . . So if they weren't having an affair, what would explain all of those things that you're so offended by?
>
> A. Favoritism.
>
> Q. Based on what?
>
> A. He's spending all his time in her office.
>
> Q. Why is he spending all of his time in her office?
>
> A. You're going to have to ask him. *I don't know that.*

*Id.* at A295 (emphasis added).

Mr. Clark thus admitted that if the favoritism was not due to an affair, he did not know the reason for it. More to the point, he did not state that Mr. Perschon favored Ms. Silver due to the fact that she was a female. Moreover, as will be seen in our discussion of the retaliation claim, his complaints to Cache Valley management also were based on favoritism resulting from the alleged affair or romantic relationship, rather than gender bias.

### 2. Analysis

We review the district court's summary judgment ruling de novo, applying the same standard as the district court. *EEOC v. Abercrombie & Fitch Stores, Inc.*, 731 F.3d 1106, 1116 (10th Cir. 2013). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a summary judgment disposition, "[w]e view the facts, and all reasonable inferences those facts support, in the light most favorable to the nonmoving party." *Abercrombie & Fitch*, 731 F.3d at 1116 (internal quotation marks omitted).

When the plaintiff's evidence of gender discrimination is circumstantial rather than direct, we evaluate his claim using the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under *McDonnell Douglas*, a plaintiff carries the initial burden of establishing a prima facie case of discrimination." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013). To assert a prima facie case of gender discrimination in the workplace, a plaintiff must

ordinarily show that "(1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). In a reverse gender discrimination case like this one, however, a plaintiff "must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006) (internal quotation marks omitted). "Alternatively, a plaintiff may produce facts sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred." *Id.* (internal quotation marks omitted).

"Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action." *PVNF*, 487 F.3d at 800. "If the employer does so, the burden shifts back to the plaintiff to show that there is a genuine issue of material fact as to whether the employer's proffered reasons are pretextual." *Id.*

Mr. Clark presented no evidence that Cache Valley treated women more favorably than men, and no circumstances giving rise to an inference of discrimination. Indeed, as the district court concluded, Mr. Clark merely provided evidence that Mr. Perschon extended preferential treatment to *one* female employee:

Ms. Silver, a co-worker with whom Mr. Perschon allegedly was having an affair or some other form of "improper" relationship. Favoritism of a paramour is not gender discrimination. *See, e.g.*, *Taken v. Okla. Corp. Comm'n*, 125 F.3d 1366, 1370 (10th Cir. 1997) ("[P]referential treatment on the basis of a consensual romantic relationship between a supervisor and an employee is not gender-based discrimination." (internal quotation marks omitted)).

Mr. Clark attempts to distinguish *Taken* by arguing that he merely accused Mr. Perschon of some other form of affiliation with, or vaguely "improper relationship" with, Ms. Silver, rather than an actual sexual relationship. *See* Aplt. Opening Br. at 54 (misstating case law to hold that "the preferential treatment [must] *actually arise out of a sexual affiliation* instead of gender in order for the favoritism to be outside of the purview of Title VII." (emphasis added)). But in fact, other motives such as friendship, nepotism, or personal fondness or intimacy, rather than an actual sexual relationship, also suffice to remove the case from Title VII's anti-discrimination provisions. *See, e.g.*, *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1171-72 (10th Cir. 2007) (finding no inference of discrimination where supervisor treated male employee with whom he was friends "differently than any of his other direct reports, male or female," including hosting and paying for a birthday party for the favored employee); *Neal v. Roche*, 349 F.3d 1246, 1251 (10th Cir. 2003) (collecting cases illustrating that such motives as friendship, cronyism, or nepotism do not constitute actionable discrimination, "even when they

benefit the nonprotected friend or relative at the expense of a more qualified, protected person"); *Schobert v. Ill. Dep't of Transp.*, 304 F.3d 725, 733 (7th Cir. 2002) ("Whether the employer grants employment perks to an employee because she is a protégé, an old friend, a close relative or a love interest, that special treatment is permissible as long as it is not based on an impermissible classification.").

In sum, there is no showing that Mr. Perschon favored Ms. Silver because of gender bias. Rather, the allegations supported by the summary judgment evidence are that Mr. Perschon favored Ms. Silver because the two of them had (or behaved as though they had) some kind of special friendship, affinity, or relationship. This is insufficient to establish a case of gender discrimination. The district court therefore properly granted summary judgment on this claim.

## RETALIATION CLAIM

Mr. Clark alleged that because he complained to Cache Valley about Mr. Perschon's favoritism for Ms. Silver, Mr. Perschon retaliated against him. Mr. Perschon's retaliation took the form of trying to get a competitor to hire him away, refusing to communicate with Mr. Clark, and distancing himself from Mr. Clark. When Mr. Clark complained about Mr. Perschon's favoritism and retaliation, Cache Valley allegedly further retaliated by firing him.

Mr. Clark's retaliation claim is evaluated using the *McDonnell-Douglas* approach. The district court ruled against Mr. Clark at the third stage of the *McDonnell-Douglas* analysis, finding he had failed to show that Cache Valley's

legitimate, nondiscriminatory reason for terminating his employment was pretextual. But Cache Valley also argued—and continues to argue—that Mr. Clark's retaliation claim fails at the first (prima facie) stage, because he lacked a reasonable, good faith belief that he was opposing conduct that violated Title VII. We affirm the grant of summary judgment on the retaliation claim on this alternative basis.

### 1. Background

According to Mr. Clark, he did not complain to Cache Valley management until April 2010, when Mr. Wickizer asked him how things were going in the Teledata Division. Mr. Clark characterizes his response as follows:

> During this meeting, for the first time, I informed [Mr.] Wickizer about various issue[s] within the Division, including rumors about an alleged affair between Mr. Perschon and Ms. Silver that had been circulating within the Division and within [Cache Valley's] industry for some time. I told him I was concerned about the alleged affair because of the perception of the affair and that it was damaging [Cache Valley's] reputation, and it was difficult for me to continually respond to vendors and suppliers who had questions about the purported relationship.

Aplt. App., Vol. I at A48-49, ¶ 24.

Mr. Wickizer purportedly responded to these comments by telling Mr. Clark that he had discussed these issues with Mr. Perschon and Ms. Silver, that they had denied having a sexual or other form of personal relationship, and that Cache Valley was not concerned with what, if anything, the two of them did on their own time. Mr. Clark replied

> that [he] was still concerned about the amount of time [Mr.] Perschon was spending with [Ms.] Silver, their behavior together (that they acted unprofessionally for a business environment and more like a married

- 10 -

couple), that [Mr.] Perschon performed most of [Ms.] Silver's job functions as a Project Manager (e.g., bids, walkthroughs, takeoffs, manpower), and that she was being paid more for performing less work than the male Project Managers supervised by [Mr.] Perschon, including [Mr. Clark], and that she was unfairly getting jobs from [Mr.] Perschon.

*Id.* at A49, ¶ 27.

Mr. Clark next complained in September 2010. After two male project managers gave notice they were leaving Cache Valley, Mr. Wickizer conducted a series of interviews with the remaining project managers. During his interview with Mr. Clark, Mr. Wickizer asked if Mr. Clark thought Ms. Silver was using a prior relationship with Mr. Perschon to exact preferential treatment from Mr. Perschon. Mr. Clark said he did not know, but he

> also told [Mr.] Wickizer that [he] had no idea what was going on and that [he] did not know if [Mr.] Perschon and [Ms.] Silver had, in fact, ever had a prior sexual relationship. However, [he] again informed [Mr.] Wickizer about the fact that [Mr.] Perschon was 1) providing her most, if not all, of the jobs that came into [Cache Valley] via phone, or that came to [Mr.] Perschon; 2) allowing her to use free cable on her jobs to increase her bonuses; 3) doing her project manager work for her on larger projects; [4]) paying higher bonuses to [Ms.] Silver [than Mr. Clark] for the work she was performing; [5]) granting her excessive amounts of personal leave and not charging it to her [paid time off account]; and [6]) spending an inordinate amount of time with [Ms.] Silver during working hours.

*Id.* at A51-52, ¶ 39.

Mr. Clark made another complaint in late September 2010. On that occasion, he was told to meet with Mr. Wickizer and Mr. Perschon. During this meeting, Mr. Clark expressed to Mr. Perschon

> the frustration that the alleged affair had on [Mr. Clark] and [his] co-workers and then proceeded to outline the preferential treatment that [he] believed [Mr.] Perschon was providing to [Ms.] Silver (e.g., doing her take-offs, job walks, and manpower; giving her the majority of the job leads or customers that came into the Teledata Division, providing her with access to free cable; and paying her significant bonuses).

*Id.* at A52, ¶ 41.

Mr. Clark's penultimate complaint came in the form of a letter he wrote on November 10, 2010 to Stacy Atkinson, Cache Valley's Human Resources Representative, and Jim Laub, Cache Valley's Chief Executive Officer. This letter read in pertinent part as follows:

> Unfortunately, during the past 3+ years, I have personally and professionally suffered very serious and very real adverse affects [sic] to my employment *due [to] the relationship between my superior and one of my peers.* . . .
>
> Approximately three years ago [Mr. Perschon] *engaged in a relationship with [Ms.] Silver* that progressively became common knowledge internally among his subordinates and externally with those [with whom] we do business. This went on for several months creating a hostile work environment. We have been operating in an unproductive work environment while putting the company at risk. . . .
>
> I reported these concerns initially to Nate [Wickizer] back in April of 2010. [Mr. Wickizer] didn't believe it was Cache Valley's business as long as [Mr. Perschon] and [Ms. Silver] kept their alleged affair on their own time. Regardless of the depth of the alleged affair outside the workplace, *the relationship was inappropriate between a supervisor and a subordinate in the workplace.* The work environment is the company's business and it is the legal responsibility of any employer to

- 12 -

ensure the workplace is free of harassment or retaliation. This did not happen. In fact, a few weeks ago, I was called to talk with [Mr. Perschon] directly to "hash things out" in [Mr. Wickizer's] office. This again, is not an appropriate action relative to reports I made about [Mr. Perschon]. Cache Valley did not conduct an objective, non-bias[ed] investigation. I was not given the opportunity to speak to an unbiased party and to my knowledge nor was anyone else. I was not protected by the company – I was humiliated by the company and now I still report to the same superior who retaliated against me.

*Id.* at A86-87 (emphasis added).

Finally, during the interview he obtained with human resources in response to this complaint letter, Mr. Clark again

complained about the same things [he] had raised previously to [Mr.] Wickizer. Specifically, the disparity in pay, bonuses provided to [Ms.] Silver, [Mr.] Perschon performing the majority of [Ms.] Silver's project manager duties, granting excessive time off to [Ms.] Silver, spending an inordinate amount of time with [Ms.] Silver during working hours, and [Mr.] Perschon's retaliation against [Mr. Clark] following [his] meeting with him and [Mr.] Wickizer.

*Id.* at A54, ¶ 55.

Mr. Clark asserts that after this meeting, he met with human resources and Cache Valley's legal counsel, and was terminated. He says he was fired because he had submitted the letter of November 10. Cache Valley claims he became insubordinate by insisting that Mr. Perschon be either fired or demoted.

At his deposition, Mr. Clark was asked about his feelings about working for Mr. Perschon. He stated:

I didn't have a problem with working with [Mr. Perschon]. I've told you he's a smart guy and he can do a lot. I just think that he got off track *with his affair with [Ms. Silver]* and the way he was treating all

- 13 -

the other [project managers].  That's the whole – that's what is comes down to.

Aplt. App., Vol. I at A320 (emphasis added).

## 2.  Analysis

In order to establish a prima facie case of retaliation, Mr. Clark had to show "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo*, 452 F.3d at 1202 (footnote omitted).  Even if no actionable discrimination took place—and Mr. Clark failed to show that any did—he could still meet the first element of his prima facie case by showing that he had a reasonable good-faith belief, when he complained to Cache Valley, that he was engaging in protected opposition to discrimination.  *Crumpacker v. State of Kan., Dep't of Human Res.*, 338 F.3d 1163, 1172 (10th Cir. 2003) (permitting plaintiff to maintain retaliation claim "based on a reasonable good-faith belief that the underlying conduct violated Title VII.").

This "reasonable good-faith belief" test has both subjective and objective components.  "A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented."  *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997).  To determine whether it was objectively reasonable for a person in

- 14 -

Mr. Clark's position to have believed that he was opposing prohibited conduct, we look to the underlying substantive law. *See, e.g.*, *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (per curiam) (considering the elements of a sexual harassment claim in determining whether a plaintiff had a reasonable belief that she had been sexually harassed when she complained to her employer).

We find the Second Circuit's opinion in *Kelly v. Shapiro & Associates*, 716 F.3d 10 (2d Cir. 2013) (per curiam), persuasive here. In that case, a female employee alleged retaliatory treatment resulting from complaints about a "hostile work environment" that was "permeated by sexual favoritism" created by her brother's relationship with a female subordinate. *Id.* at 12. The brother had allegedly reduced the plaintiff's job duties and responsibilities, and removed her leadership duties, in favor of his paramour. When she complained, both of her brothers allegedly retaliated against her. The Second Circuit upheld the district court's dismissal of her retaliation claim, holding that she did not have a reasonable, good-faith belief that she had complained about conduct that violated Title VII.

The Second Circuit noted that "[a] plaintiff's belief . . . is not reasonable simply because he or she complains of something that appears to be discrimination in some form." *Id.* at 15. Noting that "nothing in our Title VII jurisprudence requires a plaintiff to append to each allegation of harassment that conclusory declaration 'and this was done because of my sex,'" *id.* (internal quotation marks and brackets omitted), the court nevertheless concluded that the plaintiff's complaint failed to

allege facts from which she could have developed a reasonable, good-faith belief that her employer had violated Title VII:

> Although [the plaintiff] alleges that she repeatedly used the words "discrimination" and "harassment" when complaining to her employers, her argument that the widespread sexual favoritism constituted gender discrimination because it resulted in an atmosphere demeaning to women is entirely unsupported by the allegations in her complaint. . . .
>
> [T]here is no indication either that [the plaintiff] herself possessed a good-faith belief that she was complaining of conduct prohibited by Title VII or that her employers could have understood her complaints in this way.

*Id.* at 15-16 (internal quotation marks, brackets, and ellipsis omitted).

The Second Circuit rejected the plaintiff's argument that "as a non-lawyer, she should not be required to understand the 'paramour preference' or other intricacies of our Title VII jurisprudence." *Id.* It noted that "mere subjective good faith is insufficient; the belief must be reasonable and characterized by *objective* good faith." *Id.* (internal quotation marks and brackets omitted). The plaintiff had "failed to allege facts demonstrating that even a legally unsophisticated employee would have a good faith, reasonable belief that the Defendants' preferential treatment of [the female subordinate] constituted discrimination [against plaintiff] based on gender." *Id.* at 17 (internal quotation marks and ellipsis omitted).

For reasons similar to those in *Kelly*, Mr. Clark's retaliation claim must fail. Although he included conclusory statements about "discrimination" or a "hostile work environment" in his complaints to his supervisors and human resources, and occasionally opined that Mr. Perschon favored Ms. Silver over "male" employees,

- 16 -

nothing in those complaints illustrated a reasonable, good faith belief that Cache Valley was engaged in gender discrimination. Rather, Mr. Clark complained about Mr. Perschon's inappropriate conduct with Ms. Silver, and the resulting favoritism shown to her.

Mr. Clark also argues, briefly, that he has "direct evidence" of retaliation that removes this case entirely from the *McDonnell-Douglas* paradigm. Aplt. Opening Br. at 45. Specifically, he claims (1) that Cache Valley's counsel told him at the time he was fired that it was because he sent the November 10, 2010, complaint letter, *see* Aplt. App., Vol. I at A329-30, and (2) that Mr. Wickizer testified that part of the reason Mr. Clark was terminated was because he sent the letter, *see id.* Vol. II at A498.

Although this may be direct evidence that Cache Valley fired Mr. Clark because he complained, this by itself is insufficient to survive summary judgment on the retaliation claim. Mr. Clark must still show that he complained because he reasonably believed that Cache Valley's conduct violated Title VII. After all, an employer could *admit* having fired an employee for complaining about most anything—from the size of his office to the food in the company cafeteria—but this would not be direct evidence of retaliation under Title VII, unless the employee's complaint concerned discrimination, or the employee at least reasonably in good faith believed that it did. Such a reasonable, good-faith belief is missing from this case.

Finally, Mr. Clark attempts to remove his allegations of retaliation one step from the "paramour exception." He argues that after he complained about Mr. Perschon's favoritism toward Ms. Silver, Mr. Perschon retaliated against him. He then endured further retaliation for complaining to Cache Valley about Mr. Perschon's retaliation. He contends that his retaliation complaints involved protected conduct. In other words, he claims that he was retaliated against for complaining about retaliation.

This claim fares no better than his other allegations of retaliation. Title VII prohibits an employer from retaliating against an employee "because he has opposed any practice *made an unlawful employment practice by this subchapter*." 42 U.S.C. § 2000e-3(a) (emphasis added). Mr. Clark fails to show that it is an "unlawful employment practice" to retaliate against an employee who complains about favoritism shown to a supervisor's paramour or special friend, or that an employee could have a reasonable, good-faith belief that it is. Thus, though he complained about retaliation, he did not complain about retaliation that constituted an "unlawful employment practice," and was not retaliated against for making such a complaint.

## CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court


Mary Beck Briscoe
Chief Judge

- 18 -