NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0547n.06

No. 17-2412

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Nov 01, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| PAULA MCDANIELS, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| PLYMOUTH-CANTON COMMUNITY | ) | |
| SCHOOLS, | ) | |
| | ) | **OPINION** |
| **Defendant-Appellee.** | ) | |
| | ) | |

Before: SILER, MOORE, and ROGERS, Circuit Judges.

KAREN NELSON MOORE, Circuit Judge. Plaintiff Paula McDaniels appeals the

district court's grant of Defendant's Motion for Summary Judgment on her claims of gender

discrimination under Title VII and Michigan's Elliott-Larsen Civil Rights Act (ELCRA) as well as

its dismissal of her FMLA retaliation claim. McDaniels applied three times to Plant Engineer

positions within Plymouth-Canton Community Schools ("PCCS") and was passed over each time

in favor of a male candidate. PCCS explains that it selected those candidates because they had

closer relationships with members of the hiring committee and because they had been observed to

be more proficient in hands-on maintenance skills than McDaniels. Although McDaniels

establishes a prima facie case of discrimination, she cannot carry her burden of showing that

PCCS's proffered reason for failing to hire her was pretext for gender discrimination. Her FMLA claim fails for the same reason. We therefore **AFFIRM**.

## I. BACKGROUND

The PCCS maintenance department organized its employees into a three-tier hierarchy with custodians at the lowest level, followed by Assistant Head Maintenance Custodians (AHMs), and at the highest level, Plant Engineers. R. 18-11 (Lau Dep. at 5) (Page ID #185). AHMs who worked at high schools were termed AHM-As and were paid more due to the larger size of the school and resultant increased workload. R. 18-2 (McDaniels Dep. at 29–30) (Page ID #128). AHM-Bs worked at middle schools, and AHM-Cs worked at elementary schools. R. 18-2 (McDaniels Dep. at 29) (Page ID #128). AHMs "[a]ssist[ed ] in the responsibility for the operation, care and general maintenance of the heating, ventilation, lighting, and plumbing systems in the building" and "[a]ssist[ed] in cleaning the building," among other tasks. R. 18-4 (AHM Job Description) (Page ID #157).

Plant Engineers were "[r]esponsible for the operation, care and general maintenance of the heating, ventilating, lighting, and plumbing systems in the building." R. 18-3 (Gallimore Plant Engineer Job Description) (Page ID #154). "Plant Engineers were required to perform tasks such as stripping the wood gym floors and repairing classroom furniture; changing light ballasts, light switches and plugs; doing necessary maintenance to repair supply fan motors, including replacing wiring; change Sloane valves and faucets; fix plumbing leaks; repair toilets . . . ; [and] repair motors on small and mid-size equipment." R. 18-6 (West Aff.) (Page ID #161).

The AHMs' and custodians' union had reached an agreement with the Plymouth County Board of Education that provided for the creation of a series of courses that maintenance department members could enroll in, the completion of which would be taken into account in promotion decisions. R. 23-12 (Mem. of Agreement between the Plymouth-Canton Board of Education and Custodial Employees (Local 1)) (Page ID #423). The half-day courses covered a series of different topics—carpentry, plumbing, HVAC (heating, ventilation, air-conditioning), electrical, light equipment, and heavy equipment. Nothing in the record demonstrates a requirement that all candidates complete the courses prior to being promoted.[1]

Plaintiff Paula McDaniels was hired by PCCS in 1997. R. 18-2 (McDaniels Dep. at 19) (Page ID #125). She started work as a custodian and was promoted to AHM-C at Hoben Elementary School in 2005. R. 18-2 (McDaniels Dep. at 21–22) (Page ID #126). Mike Hartline served as Plant Engineer and McDaniels's supervisor. R. 18-11 (Lau Dep. at 10) (Page ID #184). McDaniels and Hartline were and remain close friends. R. 18-2 (McDaniels Dep. 42) (Page ID #131). McDaniels received excellent performance evaluations. R. 23-5 (McDaniels Evaluations) (Page ID #394–403). She also completed all but one of the district's maintenance courses. R. 18-2 (McDaniels Dep. at 38–40) (Page ID #130).

---

[1]In his deposition, Henry Lau said that it was only "suggested" that employees who had been with PCCS prior to the classes "com[ing] out [in] the 2000's" take the classes, while "[p]eople after had to take them." R. 18-11 (Lau Dep. at 39) (Page ID #191). The record does not indicate when exactly the classes were instituted; the Memorandum of Agreement that provides for their creation is undated. R. 23-12 (Mem. of Agreement between the Plymouth Canton Board of Education and Custodial Employees (Local 1)) (Page ID #423). Paula McDaniels testified that, at one maintenance meeting held by Lau, attendees were notified that there had been a "change [to] the hiring process" and that "one of the things they stipulated is you must have all your classes." R. 18-2 (McDaniels Dep. at 92) (Page ID #143).

McDaniels took 18 days of FMLA leave in July 2012. R. 18-2 (McDaniels Dep. at 71) (Page ID #138). Hartline included in her April 29, 2013 performance evaluation that her "attendance and punctuality" were both "effective" (the highest ranking) and "need[ed] improvement," noting that "in the past she has had medical problems." R. 23-5 (McDaniels Evaluations) (Page ID #402). In the "additional comments—Strengths or recommendations for improvement" area, Hartline wrote "Just for Paula to get better because of her medical issues which I know they will fade away. Paula is a very hard worker. Thank God we have her at Hoben." R. 23-5 (McDaniels Evaluations) (Page ID #403). The same performance evaluations left room for McDaniels and Hartline jointly to "[l]ist [ ] performance goals . . ." R. 23-5 (McDaniels Evaluations) (Page ID #394–403). McDaniels wrote comments such as "[s]ave up sick time," "[w]ork harder to keep my health up," and "my goal every year so far is less time off. To [sic] many medical [ ]." R. 23-5 (McDaniels Evaluations) (Page ID #395, 401). These evaluations were eventually reviewed by Maintenance Director Harry Lau. R. 18-11 (Lau Dep. at 21, 64–66) (Page ID #187, 197–98).

*Gallimore Elementary School Position*

In March 2013, PCCS solicited applications for the Plant Engineer position at Gallimore Elementary School. The job posting included a description of the job ("[r]esponsible for the operation, care and general maintenance of the heating, ventilating, lighting, and plumbing systems in the building…") and the desired qualifications. The "minimum qualifications" section noted that candidates should have "[s]atisfactory completion of contractual training requirements." R. 18-3 (Gallimore Plant Engineer Job Description) (Page ID #154).

McDaniels applied for the Gallimore position. R. 18-2 (McDaniels Dep. at 44) (Page ID #131). She was selected as one of six finalists. The determination of finalists for the Plant Engineer positions appears to have been based largely on seniority. R. 18-2 (McDaniels Dep. at 91–92) (Page ID #143); R. 18-9 (List of Applicants for Gallimore Position) (Page ID #177). Two other women, Kathy Ladenberger and Judy Spehar, were also finalists. R. 18-11 (Lau Dep. at 22–23) (Page ID #187). Jeff Maloney, an AHM-A who had completed all but one of his district maintenance courses and had been at PCCS for twelve years, was also a finalist. R. 18-9 (List of Applicants for Gallimore Position) (Page ID #177). Finalists took a written test and interviewed with the hiring committee, which was composed of the school's principal, Kimberly May, Maintenance Director Harry Lau, Plant Engineer Bruce Haarala (who was Lau's assistant), and Plant Engineer and Union Representative Joe West. R. 18-2 (McDaniels Dep. at 53) (Page ID #134). Lau had never hired a female Plant Engineer during his term as Maintenance Director, during which he had hired over 20 Plant Engineers. R. 18-11 (Lau Dep. at 29) (Page ID #189). However, one or two female Plant Engineers worked for PCCS. R. 18-2 (McDaniels Dep. at 56–57) (Page ID #134–35).

Dan Wolff, who had been with PCCS since 1996, was offered the position. R. 18-3 (Gallimore Plant Engineer Job Description) (Page ID #154); R. 18-11 (Lau Dep. at 17) (Page ID #188). PCCS claims that Wolff was employed as an AHM-A at Salem High School when he was offered the Plant Engineer job at Gallimore (R. 18-11 (Lau Dep. at 27) (Page ID #188)); McDaniels claims that he was a custodian there. R. 18-2 (McDaniels Dep. at 59) (Page ID #135). Wolff had received excellent evaluations. R. 18-10 (Wolff Evaluation) (Page ID #180). Lau had worked with Wolff regularly and had encouraged him to apply for the Gallimore job. R. 18-11 (Lau Dep. at 39,

43) (Page ID #191, 192). Wolff had not completed any of the district's maintenance courses. R. 18-9 (List of Applicants for Gallimore Position) (Page ID #177).

The hiring committee maintains that it valued hands-on experience performing preventive maintenance tasks over attending the district's classes. R. 18-11 (Lau Dep. at 21–22) (Page ID #187); R. 18-6 (West. Aff.) (Page ID #162). It also cites personal experience that members of the committee had had working with Wolff, witnessing his maintenance skills first-hand (R. 18-11 (Lau Dep. at 38, 40) (Page ID #191)), his superior answers to questions during the interview, and his thorough responses on the written exam as motivating their decision to hire Wolff over McDaniels. R. 18-6 (West Aff.) (Page ID #162).

On June 15, 2013, McDaniels filed a Charge of Discrimination with the EEOC alleging gender discrimination in the Gallimore hiring decision. R. 18-22 (EEOC Charge of Discrimination) (Page ID #267).

*Hulsing Elementary School Position*

In September 2013, PCCS solicited applications for the Plant Engineer position at Hulsing Elementary School. R. 18-11 (Lau Dep. at 44–45) (Page ID #193–94); R. 18-12 (Hulsing Plant Engineer Job Posting) (Page ID #203). The hiring committee selected four finalists, including McDaniels. R. 18-13 (Hulsing Applicant List) (Page ID #206). The Hulsing hiring committee consisted of the school's principal, James Johnson, Lau, and Union Representatives West and Kevin Jantovsky. R. 18-11 (Lau Dep. 54) (Page ID #195). McDaniels applied for the position along with seventeen others. R. 18-13 (Hulsing Applicant List) (Page ID #207). McDaniels and Derek Leright

were selected as the two ultimate finalists for the position. R. 18-11 (Lau Dep. at 52) (Page ID #194).

Leright was selected for the position. R. 18-11 (Lau Dep. at 47) (Page ID #193). He had already worked at Hulsing for a year as an AHM-C prior to the posting and had already gotten to know Principal Johnson. R. 18-11 (Lau Dep. at 49) (Page ID #194); R. 18-14 (Johnson Aff.) (Page ID #209). Members of the hiring committee cited Johnson's familiarity with Leright's work and good relationship with Leright, Leright's superior maintenance skills, and Leright's communication of those skills during his interview as reasons for his hire. R. 18-6 (West Aff.) (Page ID #162); R. 18-14 (Johnson Aff.) (Page ID #209–10).

Meanwhile, throughout the entire period contemplated by McDaniels's complaint, ongoing budget deficits led to repeated budget cuts at PCCS, which spurred restructuring and layoffs. R. 18-2 (McDaniels Dep. at 107) (Page ID #147). In June 2014, PCCS laid off teachers and privatized the AHM and custodial positions. R. 18-2 (McDaniels Dep. at 108–09) (Page ID #147–48). Accordingly, AHMs and custodians were given notice of their layoffs. R. 18-2 (McDaniels Dep. at 109) (Page ID #148). PCCS contracted with Grand Rapids Building Services to provide custodial and maintenance services for the schools. Laid-off maintenance workers were offered employment at PCCS under the new contract. R. 18-2 (McDaniels Dep. at 108–10) (Page ID #147–48). Plaintiff did not return to PCCS as an employee of Grand Rapids Building Services, and her employment with PCCS ended in late June 2014. R. 18-2 (McDaniels Dep. at 110) (Page ID #148).

*Workman Elementary School Position*

In June 2014, PCCS solicited applications for a Plant Engineer position at Workman Elementary School. McDaniels again applied for the position. R. 18-2 (McDaniels Dep. at 110–11) (Page ID #148). Michael Oakes, Sr. was selected for the Workman Plant Engineer position. R. 18-2 (McDaniels Dep. at 111) (Page ID #148). Oakes had been first hired by PCCS as a custodian in 2009 and had prior work experience in construction. R. 18-18 (Tszykiewicz Aff.) (Page ID #238). West had worked with Oakes and had a positive opinion of him. R. 18-6 (West Aff.) (Page ID #162). Members of the hiring committee stated that Oakes was hired because his work experience would allow the school district to reduce its reliance on expensive outside journeymen to handle preventive maintenance matters involving mechanical work, plumbing, electrical, and woodworking. R. 18-18 (Tszykiewicz Aff.) (Page ID #238).

After the Workman hire, there was an opening for the Plant Engineer position at Allen Elementary School. Kathy Ladenberger was hired for the position. R. 18-18 (Tszykiewicz Aff.) (Page ID #240). Her employment there was short-lived, however, as in 2015 all of the Plant Engineer positions at PCCS were eliminated due to additional budget cuts. R. 18-18 (Tszykiewicz Aff.) (Page ID #240).

On June 9, 2015, McDaniels received a right-to-sue letter from the EEOC. R. 1 (Pl.'s Compl. at 2) (Page ID #2). On September 2, 2015, she filed a complaint in the U.S. District Court for the Eastern District of Michigan against the Plymouth–Canton Community Schools, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, the Michigan Elliott–Larsen Civil Rights Act (ELCRA), MICH. COMP. LAWS § 37.2101 *et seq.*, and the Family

8

and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.* In June 2017, PCCS moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. R. 18 (Def.'s Statement of Facts and Mem. of Law in Supp. of Mot. for Summ. J.) (Page ID #70). In September 2017, the district court held a hearing on PCCS's Motion for Summary Judgment. R. 30 (Hr'g on Def.'s Mot. for Summ. J.) (Page ID #478). On October 18, 2017, the district court issued its Memorandum and Order Granting Defendant's Motion for Summary Judgment which also dismissed McDaniels's FMLA claim, finding it waived as McDaniels's response addressed it in "a single paragraph" and "fail[ed] to respond to PCCS's arguments." R. 26 (Mem. and Order Granting Def.'s Mot. for Summ. J. at 1) (Page ID #455). McDaniels filed a timely Notice of Appeal on November 17, 2017. R. 28 (Notice of Appeal) (Page ID #476).

## II. DISCUSSION

### A. Standard of Review

We review a district court's grant of summary judgment de novo. *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 463 (6th Cir. 2006). Summary judgment should be granted if the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). On summary judgment the record "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted). However, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. at 586.

**B. Title VII and ELCRA Claims**

   **1. Jurisdiction**

PCCS correctly asserts that McDaniels filed only one charge of discrimination with the EEOC, based on her failure to be hired for the position at Gallimore Elementary School, not Hulsing or Workman. Principal Br. of Def.-Appellant at xii; R. 18 (Def.'s Statement of Facts and Mem. of Law in Supp. of Mot. for Summ. J. at viii) (Page ID #77). PCCS argues that the district court did not have jurisdiction over her claims pertaining to the hiring decisions at Hulsing and Workman because they were not the subject of a timely filed EEOC complaint. R. 18 (Def.'s Statement of Facts and Mem. of Law in Supp. of Mot. for Summ. J.) (Page ID #77). In its order, the district court assumed without deciding that McDaniels's claims based on all three positions were properly before the court because PCCS had addressed all three decisions in its briefing. R. 26 (Mem. and Order Granting Def.'s Mot. for Summ. J. at 2 n.2) (Page ID #456). We now conclude that the district court did in fact have jurisdiction over McDaniels's three claims of failure to hire: federal question jurisdiction over the Gallimore claim and supplemental jurisdiction over the Hulsing and Workman claims.

"It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge." *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 379 (6th Cir. 2002) (quoting *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001)). The record reflects McDaniels having filed one EEOC claim, dated June 15, 2013 and alleging that PCCS failed to hire her for the Gallimore position due to gender discrimination. R.

18-22 (EEOC Charge of Discrimination) (Page ID #267). This charge makes no mention of the two other instances in which PCCS failed to hire McDaniels for Plant Engineer positions, both of which happened after McDaniels filed her EEOC claim. Plaintiff claims that this June 2013 EEOC claim resulted in the issuance of a right-to-sue letter on or about June 9, 2015.[2] *See* R. 1 (Pl.'s Compl. at 2) (Page ID #2). At the least, the district court had federal question jurisdiction over the Title VII claim regarding the Gallimore position.

A district court that has federal question jurisdiction over a claim may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court should look to "values of judicial economy, convenience, fairness, and comity" in deciding whether the exercise of supplemental jurisdiction is proper. *Gamel v. City of Cincinnati*, 625 F.3d 949, 951–52 (6th Cir. 2010) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *accord Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993)).

Under ELCRA, a plaintiff may bring her claim in state court without having first administratively exhausted it. MICH. COMP. LAWS § 37.2801(1) and (2); *Walters v. Mich. Dep't of Treasury*, 385 N.W.2d 695, 700 (Mich. Ct. App. 1986). The statute of limitations for an ELCRA claim is three years from the time the cause of action accrues. *Garg v. Macomb Cty. Cmty. Mental*

---

[2]The right-to-sue letter itself is not included in the record. The record does include a letter dated January 13, 2015 from the EEOC to McDaniels noting that the EEOC had received her request for a Notice of Right to Sue and that the DOJ would "act on [her] request and issue the Notice directly to [her]." R. 23-15 (Letter from EEOC to Plaintiff's Counsel) (Page ID #429).

*Health Servs.*, 696 N.W.2d 646, 659 (Mich. 2005). McDaniels filed her claims in federal court on September 2, 2015, within three years of all three of PCCS's alleged discriminatory actions. R. 18-22 (Charge of Discrimination) (Page ID #267); R. 18-13 (Hulsing Recommendation for Hire) (Page ID #206); Appellant's Br. at 10.

The district court had supplemental jurisdiction over Plaintiff's ELCRA claims for all three failures to hire. The Hulsing and Workman claims are sufficiently related to the Gallimore claim. The decisions were made close in time to one another, involved some of the same decision-makers, and involved reviewing McDaniels's work history and qualifications. Most importantly, PCCS advanced the same non-discriminatory rationales to explain all three decisions. Therefore, we consider all three hiring decisions in reviewing the district court's grant of summary judgment to PCCS.

### 2. McDonnell Douglas Burden Shifting Analysis

A plaintiff may prove a Title VII claim with either direct or circumstantial evidence. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). We analyze claims supported by circumstantial evidence under the *McDonnell Douglas* burden-shifting analysis.[3] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff carries the burden of establishing a prima facie case of discrimination. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (overruled on other grounds by *Gross v. FBL Fin. Servs, Inc.*, 557 U.S. 167 (2009), as recognized in *Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009)). Then the

---

[3]"Claims under Michigan's Elliott-Larsen Civil Rights Act involve the same analysis as Title VII claims." *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 n.4 (6th Cir. 2003).

burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason

for its employment decision. *Manzer*, 29 F.3d at 1082. Finally, the plaintiff must demonstrate

pretext—"i.e. that the employer's explanation was fabricated to conceal an illegal motive." *Chen*,

580 F.3d at 400 (citing *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007)).

### a. Prima facie case

In order to establish a prima facie case of discrimination, the plaintiff must show that "(1)

she was a member of a protected class; (2) she applied for and was qualified for the position . . . ;

(3) she was considered for and denied the position, and (4) she was rejected in favor of another

person with similar qualifications who was not a member of her protected class." *Betkerur v.*

*Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir. 1996).

McDaniels has established a prima facie case of discrimination. McDaniels is a member of

a protected class; she is a woman. She applied for and was qualified for the position of Plant

Engineer three times—first at Gallimore, then at Hulsing, and finally at Workman. McDaniels was

considered for and denied the position of Plant Engineer three times. Finally, she was rejected in

favor of other people with similar qualifications who were not members of her protected class—the

three men: Wolff, Leright, and Oakes.

PCCS disputes the fourth element; it argues that the three men selected for the Plant

Engineer positions did not have "similar qualifications" in that they possessed greater hands-on

experience dealing with maintenance issues than McDaniels. The district court was correct in its

assessment, however, that this argument goes more to the third step of the *McDonnell Douglas*

analysis—determining whether Defendant's proffered reasons for its decisions are pretextual.

McDaniels was considered qualified for the positions and had similar qualifications to the men who were hired. She was a finalist in at least two of the three hiring processes, had served in her position for about the same period as or longer than the candidates who were hired, and her supervisor had given her excellent reviews, as had theirs.

### b. Legitimate Non-Discriminatory Reason

Once the plaintiff has established her prima facie case, the burden shifts to the defendant to articulate a "legitimate non-discriminatory reason" for its employment decision. *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001). PCCS offers two legitimate non-discriminatory reasons why other candidates were chosen over McDaniels. First, PCCS claims that the hiring committee preferred candidates with demonstrated hands-on experience with "preventive maintenance" to experience acquired primarily through courses. PCCS claims that Wolff, Leright, and Oakes demonstrated hands-on experience to a greater degree than McDaniels. Second, PCCS claims that some of the hiring decisions were motivated by the stronger familiarity and personal relationships that members of the hiring committees had with the successful candidates than with McDaniels.

McDaniels challenges the legitimacy of both articulated reasons. However, our law establishes that both reasons can be legitimate and may not discriminate on the basis of gender. Whether or not a candidate has demonstrated his or her ability regularly to perform the hands-on maintenance tasks that are required of a Plant Engineer may be a legitimate and highly rational reason for selection. Further, an employer may give greater weight to some qualifications than others and may look to qualifications that are not expressly articulated in the job description. *See*

*Browning v. Dep't of the Army*, 436 F.3d 692, 696–97 (6th Cir. 2006). We have additionally held that "employment-discrimination laws do 'not diminish lawful traditional management prerogatives in choosing among qualified candidates,' and an employer has 'great[ ] flexibility in choosing a management-level employee.'" *Id*. at 696 (quoting *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987)).

An employer may also make hiring decisions based on its familiarity and personal relationships with candidates. If candidates are selected because they have personal relationships or significant past involvement with the employer, the use of those criteria equally disqualifies men and women who lack said personal relationships and past involvement. Its use therefore does not discriminate on the basis of gender. *See Schobert v. Ill. Dep't of Transp.*, 304 F.3d 725, 733 (7th Cir. 2002) ("Title VII does not [ ] prevent employers from favoring employees because of personal relationships. Whether the employer grants employment perks to an employee because she is a protegé, an old friend, a close relative or a love interest, that special treatment is permissible as long as it is not based on an impermissible classification."); *Taken v. Okla. Corp. Comm'n*, 125 F.3d 1366, 1370 (10th Cir. 1997) ("Favoritism, unfair treatment and unwise business decisions do not violate Title VII unless based on a prohibited classification.").

### c. Pretext

The burden switches back to the plaintiff, who must show that a reasonable jury could find that the employer's articulated reason is pretext for unlawful gender discrimination. *Manzer*, 29 F.3d at 1083. A plaintiff may show this in three ways: that the proffered reasons: (1) "had no basis

in fact;" (2) "did not actually motivate the employer's action;" or (3) "were insufficient to motivate the employer's action." *Chen*, 580 F.3d at 400.

Under the first approach, we grant summary judgment to the defendant when the plaintiff "'only create[s] a weak issue of fact as to whether the defendant's reason [is] untrue' and there is ample evidence to support the employer's position." *Abdulnour v. Campbell Soup Supply Co.*, 502 F.3d 496, 504 (6th Cir. 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

McDaniels contests as false PCCS's claim that she did not have the desired qualifications. She does not contest that Wolff and Leright had closer relationships with members of the hiring committees. She does, however, argue that she had the hands-on preventive maintenance experience that the hiring committees sought. R. 22 (Pl.'s Resp. to Def.'s Statement of Facts in Supp. of Mot. for Summ. J. at 18) (Page ID #296). Yet the evidence she offers to support this claim is insufficient to allow a reasonable jury to conclude that PCCS's reason for its hiring decision has no basis in fact. McDaniels's affidavit itself does not discuss her ability to perform preventive maintenance tasks generally, nor does it attest to her specific skills with regard to plumbing, electrical work, HVAC, or carpentry. R. 23-10 (McDaniels Aff.) (Page ID #417). At her deposition, she testified to having "[v]ery little" experience in plumbing, having "changed two toilets in [her] household," "four Sloan valves in the school district," as well as "[t]he washers . . . probably about a good five times from a leaky faucet." R. 18-2 (McDaniels Dep. at 13) (Page ID #124). With regard to electrical work, she reported having "changed [at least ten] outlets, [about two] light switches . . . [e]lectric lightbulbs, [three] ballasts," but maintained that she had "[l]ess"

experience with electrical work than with plumbing and reported that she "tr[ied] to stay away from electric as much as possible." R. 18-2 (McDaniels Dep. at 14) (Page ID #124). With regard to carpentry work, McDaniels reported having "very little" experience. R. 18-2 (McDaniels Dep. at 15) (Page ID #124). No reasonable jury could find that a plaintiff who herself admits to having "very little" experience in plumbing and "even less" in electrical work had demonstrated significant hands-on maintenance experience, the legitimate qualification sought by the hiring committees.[4]

The fact that McDaniels was a finalist in at least two Plant Engineer hiring processes is not necessarily strong proof that she had demonstrated significant hands-on preventive maintenance experience. The determination of finalists for the Plant Engineer positions was based largely on seniority, so McDaniels may have been guaranteed finalist spots simply by having been employed by the district longer than other applicants. R. 18-2 (McDaniels Dep. at 91–92) (Page ID #143); R. 18-9 (List of Applicants for Gallimore Position) (Page ID #177).

PCCS and the district court both discussed the honest belief rule in their briefs and order, respectively. If, under the first approach to establishing pretext, the plaintiff demonstrates that the non-discriminatory reason given by the defendant is "mistaken, foolish, trivial, or baseless" (has no

---

[4]The affidavit of Gregory Gorsky, a former coworker of McDaniels, provides the strongest evidence that she had hands-on competence in the disputed areas. However, Gorsky's affidavit was sworn and filed on July 17, 2017, (R. 23-16 (Gorsky Aff.) (Page ID #432), the same day that McDaniels filed her Response to Defendant's Motion for Summary Judgment (R. 23 (Pl.'s Resp. in Opp. To Def.'s Mot. for Summ. J.) (Page ID #298)), well after the discovery cut-off of May 15, 2017 (R. 17 (March 31, 2017 Am. Scheduling Order) (Page ID #69)), and even after Defendant's Motion for Summary Judgment was filed on June 1, 2017 (R. 18 (Def.'s Statement of Facts and Mem. of Law in Supp. of Mot. for Summ. J.) (Page ID #70)). The district court's grant of summary judgment did not mention the Gorsky affidavit. R. 26 (Mem. and Order Granting Def.'s Mot. for Summ. J.) (Page ID #455). We have held that district courts have "discretion to refuse the filing of untimely affidavits." *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1446 (6th Cir. 1993); *see also Estes v. King's Daughters Med. Ctr.*, 59 F. App'x 749, 752 (6th Cir. 2003). Here, because McDaniels filed the affidavit after the close of discovery and after PCCS's Motion for Summary Judgment, the affidavit refutes her own testimony about her skills and experiences, and the district court's order completely ignores the affidavit, we likewise will not consider it.

basis in fact), only then does the honest belief rule come into play, allowing the employer to escape liability by showing that it honestly believed its proffered reason was true. *Clay*, 501 F.3d at 714–15. Here, as discussed above, McDaniels has failed to show that PCCS's belief that she was lacking hands-on preventative maintenance experience was "mistaken, foolish, trivial, or baseless." The honest belief rule is therefore inapplicable. *See id*. at 715.

Under the second approach to showing pretext, the plaintiff must demonstrate that a reasonable jury could find that "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup," and did not actually motivate its action. *Manzer*, 29 F.3d at 1084; *see also Macy v. Hopkins Cty. Sch. Bd. of Educ.*, 484 F.3d 357, 368 (6th Cir. 2007). McDaniels produces the additional circumstantial evidence that Lau had never hired a female Plant Engineer during his term as Maintenance Director, during which he had hired over 20 Plant Engineers. R. 18-11 (Lau Dep. at 29) (Page ID #189). This is indeed troubling. However, one or two female Plant Engineers worked for PCCS, and another was hired after McDaniels's departure. R. 18-2 (McDaniels Dep. at 56–57) (Page ID #134–35); R. 18-18 (Tszykiewicz Aff.) (Page ID #240). Given McDaniels's own admissions about her lack of hands-on experience in the desired areas and the sparsity of additional circumstantial evidence of gender discrimination, she cannot make a reasonable claim that "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Manzer*, 29 F.3d at 1084.

Under the third approach to showing pretext, the plaintiff must point to evidence "that other employees, particularly employees not in the protected class," did not suffer the same negative

employment outcome "even though they engaged in substantially identical conduct to that which the employer contends motivated" its decision with regard to the plaintiff. *Manzer*, 29 F.3d at 1084. McDaniels has not pointed to male AMHs who were hired as Plant Engineers despite their lack of considerable hands-on maintenance experience or relationships with members of the hiring committee.

As McDaniels is unable to show that a reasonable jury could find that Defendant's articulated non-discriminatory motive was pretext for gender discrimination under any of the three approaches, she cannot carry her burden. Thus, her Title VII and ELCRA claims fail.

## C. FMLA Claim

McDaniels argues that PCCS retaliated against her for taking FMLA leave by failing to hire her for the Plant Engineer positions. She argues that Lau reviewed Hartline's note regarding her medical absences a part of his assessment of Plant Engineer candidates, and then "downgraded her." Appellant's Br. at 30. It is unclear whether McDaniels is arguing only that PCCS's failure to hire her was the retaliatory act or also that Hartline's notation itself was an unlawful retaliation.[5] *See* Appellant's Br. at 29 (arguing that "[t]he reference to Plaintiff's medical issues was improper, retaliatory and unlawful under FMLA," but later discussing McDaniels's failure to be hired for the Hulsing position).

---

[5]If we interpreted McDaniels's retaliation claim to be based on Hartline's evaluation comments themselves, it would not be actionable because the comments were too insignificant to constitute an adverse employment action. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000). Such a claim would also be time barred because the evaluation was dated April 29, 2013, over two years before McDaniels filed her claim. R. 23-5 (April 29, 2013 Hartline Performance Evaluation) (Page ID #402–03); 29 U.S.C. § 2617(c)(1).

Title 29 U.S.C. § 2617(a)(2) allows employees to bring FLMA claims "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1). If a plaintiff alleges a willful FMLA violation, the statute of limitations extends to three years. 29 U.S.C. § 2617(c)(2). McDaniels's complaint does not allege a willful FMLA violation. R. 1 (Pl.'s Compl.) (Page ID #1). The hiring decisions that McDaniels alleges were retaliation against her for having taken FMLA leave took place in June 2013 (Gallimore), October 2013 (Hulsing), and July 2014 (Workman). R. 18-22 (EEOC Charge of Discrimination) (Page ID #267); R. 18-3 (Hulsing Recommendation for Hire) (Page ID #206); Appellant's Br. at 10. McDaniels filed her complaint on September 2, 2015. Therefore, only claims based on alleged FMLA retaliation in the Hulsing and Workman positions might remain viable.

The district court held that McDaniels had waived her FMLA claim by failing to develop it, and accordingly dismissed it. R. 26 (Mem. and Order Granting Def.'s Mot. for Summ. J. at 1 n.1 (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.")) (Page ID #455). McDaniels indeed devoted very few pages to the FMLA claim and failed to respond substantially to many of PCCS's arguments. However, addressing McDaniels's FMLA claim on the merits, we may affirm for any reason supported by the record. *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 514 (6th Cir. 2003).

The same *McDonnell Douglas* framework applies to FMLA retaliation claims based on circumstantial evidence as to the Title VII claim discussed above. *Donald v. Sybra, Inc.*, 667 F.3d

20

757, 762 (6th Cir. 2012). To establish a prima facie case for retaliation under the FMLA, McDaniels

must show that

> (1) she [ ] engaged in an activity protected by the FMLA; (2) [her] employer knew
> that she was exercising her rights under the FMLA; (3) after learning of the
> employee's exercise of FMLA rights, the employer took an employment action
> adverse to her; and (4) there was a causal connection between the protected FMLA
> activity and the adverse employment action.

*Id*. at 761 (quoting *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)).

We assume for the purposes of this analysis but do not decide that McDaniels has

established a prima facie case. The burden then switches to PCCS to articulate a legitimate, non-

discriminatory reason for failing to hire her for the Plant Engineer positions. *Id*. at 761–62. PCCS

has—the same ones discussed above. The burden therefore switches back to McDaniels to show

that a reasonable jury could find the articulated reasons are pretext for retaliation. This, as we have

seen, McDaniels cannot do. She cannot show the factual falsity of the basis for the proffered

reasons. Her circumstantial evidence indicating that retaliation for her having taken FMLA leave

motivated the employment decisions is even weaker than that supporting her Title VII claim.

McDaniels took FMLA leave nearly a year before the Gallimore hiring decision. The person chosen

for the Gallimore opening, Wolff, had taken an even longer FMLA leave—26 days—around the

same time as McDaniels had taken hers. McDaniels has not offered sufficient evidence to

substantiate a reasonable inference of pretext, and therefore her FMLA retaliation claim fails.

### III.  CONCLUSION

Because McDaniels has failed to offer sufficient evidence such that a reasonable jury could find that PCCS's proffered legitimate nondiscriminatory reasons for its employment decisions are pretext, we **AFFIRM**.